IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Ruthshelle Chapman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 5849 |
| | ) | |
| | ) | HONORABLE CHARLES R. NORGLE |
| The University of Chicago Hospitals, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge

Before the court is Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion for Summary Judgment is granted.

**I. BACKGROUND**[1]

**A. Facts**

Plaintiff Ruthshelle Chapman ("Chapman") was employed by Defendant The University of Chicago Hospitals ("UCH") from October 1996 until her termination in 2002. UCH is world renowned for its advances in medicine, has over 5,000 employees, eleven former Noble Laureates, and has been named to the Honor Roll of America's best hospitals by *U.S. News & World Report.* http://www.uchospitals.edu (April 18, 2005). Chapman worked as a Patient

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

Service Coordinator ("PSC") in the Cardiology Department. Her duties were mostly clerical: she admitted and discharged patients, answered phones, and ordered supplies. Chapman's supervisor at UCH was June Gradman ("Gradman"), the Clinical Director of the General Medicine and Cardiology Departments at UCH. Gradman was responsible for hiring employees, as well as conducting performance evaluations, and taking disciplinary action against the secretaries in her unit.

Beginning in 1998, Chapman first requested medical leave pursuant to the Family and Medical Leave Act (the "FMLA") for migraine headaches. Chapman applied for and took 24 days of FMLA leave in 2000, 27 days of FMLA leave in 2001, and at least 12 days of FMLA leave in 2002. In order to receive approval for medical leave, Chapman would speak with the manager on duty if she experienced a migraine while at work. Then, if Chapman took FMLA leave, she was required to visit her doctor. Dr. Keith Knapp was Chapman's treating physician, and would always sign her 'doctor's statement' forms as required under UCH's medical leave policy. Chapman concedes that all her FMLA requests were granted.

From June 3 to June 10, 2002, Chapman went on FMLA leave because she claimed she had a migraine headache. This specific leave period was the incident that eventually resulted in Chapman's termination. Chapman remembers a telephone conversation with someone at UCH in which Chapman stated that she would be at home the entire week of June 3 because of medical leave. However, Chapman does not recall who she spoke to, or exactly what was said, but she claims that she does remember the phone call. It was during this week-long absence that Gradman suspected Chapman was abusing her FMLA leave. Gradman believed that Chapman had taken off work "because of her daughter, and not necessarily for her own illness."

Specifically, Gradman stated that she reviewed Chapman's absence history, from January through June 2002, and saw what she believed to be a pattern of absences on weekends, Mondays, and Fridays. On Friday, June 7, 2002, Gradman had a phone conversation with Maryann Nolan ("Nolan") in the Human Resources Department, and Richard Downs ("Downs"), Senior Labor and Employee Relations Consultant at UCH to seek advice on Chapman's absence situation. These three individuals made the decision to hire a private detective to investigate Chapman in the event she called in sick on Saturday, June 8.

Indeed, Chapman did call in sick on Saturday, June 8. As planned, the Human Resources Department contacted a private detective, who followed Chapman and videotaped her activities for the remainder of the day. The videotape surveillance showed Chapman going in and out of vehicles, on her way to her nephew's house to celebrate his high school graduation, and smoking a cigarette. Upon review of the tape, Gradman concluded that Chapman had falsified her illness, and should be terminated. Gradman discussed her conclusions with Rita Mays ("Mays"), a Patient Care Manager at UCH, who agreed with Gradman. On June 10, 2002, Gradman asked to meet with Chapman, in order to conduct an investigatory interview, and informed Chapman that she should bring a union representative. However, Chapman alleged that she could not find a representative, and as a result, the meeting was postponed. Then, on June 13, the next day Chapman was scheduled to work, Gradman advised Chapman to find a union representative, in order to conduct the interview. Again, Chapman stated that she could not locate a representative.

On Friday, June 14, Gradman informed Chapman that she needed to conduct this interview, and if Chapman could not locate a union representative, then she could have another

3

employee who was a union member attend the interview. Chapman stated that she could not find a representative, and asked her co-worker, Yvonne Isaacs ("Isaacs") to attend. Shortly thereafter, Gradman conducted the investigatory interview with Chapman, Isaacs, and Joe Fabris ("Fabris"), a manager at UCH. At the meeting, Gradman asked Chapman the reason for her medical leave. Chapman stated that it was due to severe migraine headaches. Additionally, Gradman asked Chapman to specifically recount each day of her absence. Chapman stated that she went to the doctor, either on Thursday or Friday. On Saturday, Chapman claimed she suffered from an extreme migraine, and did not leave the house. Furthermore, Gradman asked Chapman about the doctor's note Chapman submitted to UCH for the June 3 week-long absence. Gradman asked this question because she believed the note was falsified, due to the difference between this note and others received from Dr. Knapp. Chapman cannot specifically recall what questions Gradman asked at the meeting.

After hearing Chapman's explanation for her medical leave, Gradman decided to suspend Chapman pending a full investigation, because Gradman believed that Chapman gave false statements about her activities on June 8. Once Gradman informed Chapman of this decision, Chapman stated she required a union representative. Chapman left the room, and returned a short time later with a representative, Ameena Abdullateef ("Abdullateef"). With Abdullateef present, Gradman asked Chapman the same questions. Chapman reiterated that she was at home all day Saturday with a severe migraine. Gradman again stated that Chapman was suspended, pending an investigation.

On June 27, 2002, Chapman received written notification that her employment at UCH was terminated, due to her false and misleading statements in regards to her FMLA leave of June

4

3 through June 10. The letter also explained that as a result of the investigation, UCH concluded that Chapman was "not incapable of reporting to work and falsely reported off from work via the use of FMLA." UCH's employee handbook, in addition to the UCH Personnel Policy Guidelines, allow for the immediate termination of an employee who falsifies information. In addition to Gradman, Downs reviewed and agreed with the recommendation to terminate Chapman's employment. According to UCH, Chapman was fired as a result of her false statements given to Gradman at the June 14 meeting, regarding her need for FMLA leave between June 3 through June 10. After a grievance hearing, Chapman's termination was upheld by the Human Resources Department.

## B. Procedural History

On August 20, 2003, Chapman filed her Complaint alleging a denial of her substantive rights and retaliatory discharge under the FMLA. On December 16, 2004, UCH filed its Motion for Summary Judgment. Chapman filed her Response on February 16, 2005, and UCH filed its Reply on March 1. UCH's Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

## A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance

5

Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. Retaliation Claims under the FMLA**

*1. The Substantive Law[2]*

The FMLA states in part, "an. . . employee shall be entitled to a total of 12 work weeks of leave during any 12-month period for one or more of the following:. . . because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D)(2003). The FMLA, therefore, requires health-related leave only for employees who suffer from "a serious health condition." Id; Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001). To establish the existence of such a condition an employee must submit medical certification. 29 U.S.C. § 2613(a); see Diaz v. Ft. Wayne Foundry Corp., 131 F.3d 711, 712 (7th Cir. 1997). Moreover, an employee who returns from medical leave is "entitled to be restored by the employer to the position of employment held by the employee when leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and others and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B).

---

[2]In Chapman's Response, she claims "both that UCH denied her substantive rights under the FMLA, and that UCH retaliated against her for using FMLA leave." Pl.'s Resp. at 9. The Complaint only alleges that "UCH's termination of Chapman's employment interfered with the exercise of her rights under the FMLA," and that "UCH retaliated against Chapman for exercising her rights to intermittent leave." Compl., ¶¶ 33-35.

In addition to substantive rights[3], the FMLA provides that "it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the subchapter." 29 U.S.C. § 2615(a)(1); see Haefling v. United Parcel Service, Inc., 169 F.3d 494, 498 (7th Cir. 1999). The statute prohibits an employer for discriminating or retaliating against an employee who exercises his or her rights under the FMLA. See King, 166 F.3d at 891.

In order to proceed in a claim of retaliatory discharge under the FMLA, a plaintiff may proceed under the direct method of proof, or the indirect burden-shifting framework. King, 166 F.3d at 892. Direct evidence is evidence that shows the employer's intent without the need to rely on "inference or presumption." Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 n.6 (7th Cir. 1997). Direct evidence "speak[s] directly to the issue of discriminatory intent, [and] also relate[s] to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997). It is likely the case that the only real direct evidence of discriminatory intent is an admission by the employer. Logan v. Kautex Textron N. Am., 259 F.3d 635, 638 (7th Cir. 2001); Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).

Under the indirect burden-shifting method, courts in the Seventh Circuit apply the McDonnell Douglas burden-shifting framework to "claims that an employer discriminated

---

[3]In Diaz, the Seventh Circuit held that the McDonnell Douglas framework does not apply to cases in which an employee alleges a deprivation of the FMLA's substantive guarantees by an employer. 131 F.3d at 712; see also King v. Preferred Technical Group, 166 F.3d 887, 991 (7th Cir. 1999). Chapman alleges both a substantive denial of her rights as well as a retaliation claim. See Pl.'s Resp. at 9; Compl., ¶¶ 34-35. Therefore, the McDonnell Douglas analysis is only applicable to the retaliation claim.

8

against an employee exercising rights guaranteed by the FMLA." Id; see Horwitz v. Bd. of Educ. of Aroca School Dist. No. 37, 260 F.3d 602, 616 (7th Cir. 2001). A claim of FMLA retaliation is assessed "in the same manner that we would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII." Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004).

In order to establish a prima facie case for retaliation under the indirect evidence method, the plaintiff must show that: (1) he engaged in protected conduct; (2) was subject to adverse employment action; (3) he was performing his job satisfactorily; and (4) no similarly situated employees who did not engage in protected activity were subjected to an adverse employment action. Buie, 366 F.3d at 503 (quoting Rogers v. City of Chicago, 320 F.3d 748, 750 (7th Cir. 2003)); see Hudson v. Chicago Transit Authority, 375 F.3d 552, 560 (7th Cir. 2004) (quoting Stone v. City of Indianapolis Public Util. Div., 281 F.3d 640, 644 (7th Cir. 2002)); see also McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim. Hudson, 375 F.3d at 560 (citing Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002)).

A plaintiff engages in protected activity when he or she exercises medical leave rights under the FMLA. See 29 U.S.C. § 2615(a)(1). Additionally, "an adverse employment action is a significant change in employment status, such as hiring, firing. . . or a decision causing a significant change in benefits." Herron v. DaimlerChrysler, 388 F.3d 293, 300, n.1 (7th Cir. 2004). Lastly, a plaintiff must "demonstrate that a 'similarly situated' employee is someone who is directly comparable to him in all material aspects." Id. The court must "look to all relevant factors, the number of which depends on the context of the case." Patterson v. Avery Dennison

9

Corp., 281 F.3d 676, 680 (7th Cir. 2002) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000)). Relevant factors include "whether the employees 'dealt with the same supervisor' and were 'subject to the same standards.'" Id. Additionally, the court must inquire as to whether the employees had "comparable experience, education, and qualifications, provided that the employer took these factors into consideration when making the personnel decision in question." Id.

After the plaintiff has set forth his or her prima facie case, the burden shifts to the employer to demonstrate a legitimate reason for the action. Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000). If the defendant satisfies this burden, then the burden shifts back to the plaintiff to articulate that the reasons proffered by the defendant were pretextual. Id; McDonnell-Douglas, 411 U.S. at 804; Herron, 388 F.3d at 301. Moreover, if the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Buie, 366 F.3d at 503 (quoting Rogers, 320 F.3d at 750). To establish pretext, the plaintiff may show that the reasons given by the employer are factually baseless, were not the actual motivation for the decision, or were insufficient to motivate the decision. Stewart, 207 F.3d at 378. With these principles in mind, we turn to UCH's Motion for Summary Judgment.

### 2. *Chapman has not established a prima facie case of retaliation under the FMLA*

As a preliminary matter, Chapman has failed to satisfy the similarly situated element of her prima facie case of retaliation. "Failure to satisfy any one element of the prima facie case dooms an employee's retaliation claim." Mitchell v. Dutchman Mfg., Inc., 389 F.3d 746, 750

10

(7th Cir. 2004) (citing Hudson, 375 F.3d at 560)). However, with an abundance of caution, the court analyzes each element of Chapman's prima facie case.

It is undisputed that Chapman both engaged in a protected activity, by virtue of her request for medical leave under the FMLA, and suffered an adverse employment action, as demonstrated by her termination from UCH. Additionally, neither party argues whether Chapman had performed her job satisfactorily over the course of her employment.

It is under the fourth prong of her prima facie claim that Chapman's case comes to a halt. While Chapman concedes that she alleges a retaliation claim, she presents no evidence to establish that similarly situated employees who did not exercise their rights under the FMLA were treated differently than her. Moreover, Chapman's counsel incorrectly asserts that "in this case, Ms. Chapman is using the direct approach and accordingly the indirect burden-shifting analysis is not applicable." Pl.'s Resp. at 10. Counsel's characterization of the evidence belies her own assertions. For example, Section B of Chapman's Response is styled "Circumstantial Evidence Supports Inference of Retaliation for Using FMLA Leave." Id. at 11. Circumstantial evidence and inferences are examples of indirect methods of proof. If proffered evidence requires inferences, than it can hardly be classified as "direct." See Bahl, 115 F.3d at 1290 n.6. Commonly, the only real direct evidence of discriminatory intent is an admission by the employer. Logan, 259 F.3d at 536. Chapman only offers conclusory assertions based on Gradman's statements, instead of express admissions that demonstrate an intent to fire Chapman for her use of FMLA leave. See Pl.'s Resp. at 10-11. Chapman does not discuss whether similarly situated employees at UCH were treated differently. Therefore, Chapman has not

11

satisfied this element of her prima facie case, and her retaliation claim is doomed. See Mitchell, 389 F.3d at 750.

### 3. *UCH's Legitimate Reason for Termination*

Despite Chapman's failure to establish each element of her retaliation claim, with an abundance of caution, the court will analyze the burden-shifting analysis of Defendant's Motion for Summary Judgment.

Assuming, arguendo, that Chapman has established her prima facie case, UCH is required to submit a legitimate reason for Chapman's termination. See Stewart, 207 F.3d at 376. UCH asserts that Chapman was fired because she lied to Gradman at the June 14 interview about the reasons for her medical leave. Chapman's statement that she stayed home all day Saturday is directly contradicted by the video surveillance taken by UCH's private investigator. It was not until Chapman made this assertion that Gradman fired her. In fact, Gradman postponed the investigatory interview with Chapman twice, to insure that a union representative was present. Even after Chapman received written notice of her termination, she was allowed to appeal this decision to the Human Resources department, who agreed with Gradman's decision.

Furthermore, Chapman concedes that she cannot recall what Gradman said at the June 14 meeting, or if she volunteered any information as to her whereabouts on Saturday, June 8. Def.'s Mot. for Summ. J., Supp. App., Ex. A. at 135, 159. However, Chapman does state that she never left her house during the week of June 3, except to see her doctor, yet does not recall which days her statement is in reference to. Id., at 136. Miraculously, Chapman's memory improved upon the submission of her affidavit included in her Response to UCH's Motion for Summary

12

Judgment.  See Pl.'s Resp. Ex. B., ¶ 17.  In her affidavit, Chapman recalls in great detail that on June 8, her migraine was better, so she went to see her nephew.  Id.  Additionally, Chapman is able to explain her actions that were caught on video tape.  Id.  Chapman stated that "I rode in the back seat of a car to my niece's house (changing cars on the way because my family needed to drop the first car off at another house). . . Then I rode in the back seat and rested while my niece drove out to a shopping center."  Id.

Chapman's deposition testimony directly contradicts the information contained in her affidavit.  That Chapman could not remember her actions on June 8 at the June 14 meeting, yet recalls what happened on that Saturday on February 16, 2005 strains credibility. The affidavit was submitted as an exhibit to Chapman's Response to UCH's Motion for Summary Judgment, after Chapman had knowledge of the videotape, and was included after discovery closed.  See Minute Order of September 16, 2004.  A party cannot "attempt to survive a motion for summary judgment by manufacturing a factual dispute through the submission of an affidavit that contradicts prior deposition testimony."  Amadio v. Ford Motor Co., 238 F.3d 919, 926 (7th Cir. 2001).  Furthermore, "[w]here a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner, or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy."  Id. (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995)).  The district court has considerable discretion to refuse to consider an affidavit in opposition to a motion for summary judgment.  Russell v. Harms, 397 F.3d 458, 467 (7th Cir. 2005).

Here, Chapman does not claim that she cannot remember what happened on June 8th, she merely does not recall what Gradman specifically asked her at the June 14th meeting. Chapman was asked "Do you recall being asked in that conversation what you did that week you were off work?" Def.'s Mot. for Summ. J., App., Ex. A., at 130. She answered, "I don't recall, you know, it being asked that way." Id. Furthermore, Chapman stated that she remembered telling people that she had not done anything that weekend but stay home, either in bed or on the enclosed porch. Id. at 131. Therefore, Chapman's statements in her deposition demonstrate that she did not suffer from a memory lapse, but in fact knew exactly what she did during her week off. Moreover, Chapman does not put forth a plausible explanation as to why she remembers one version of events on at the June 14, 2004 meeting, yet recalls a completely different scenario in her affidavit of February 16, 2005. See Amadio, 238 F.3d at 926. As a result, the court does not consider Chapman's affidavit in its decision of this case. See Russell, 397 F.3d at 467. UCH has asserted that it fired Chapman for her false statements in regard to FMLA leave. Chapman has done nothing to rebut this assertion.

*4. Pretext Argument*

Lastly, after UCH has established its legitimate reason for termination, Chapman is required to show that the proffered reason is pretextual. See Stewart, 207 F.3d at 376; see also Herron, 388 F.3d at 301. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Stewart, 207 F.3d at 378 (quoting Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999)). The court will not "sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." Id. Moreover, it is not sufficient to prove that the reason was

doubtful or mistaken. Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1, 147 F.3d 535, 541 (7th Cir. 1998). Pretext does not mean simply a mistake, but instead a lie, "specifically a phony reason for some action." Id. (quoting Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996)). The only concern is whether the legitimate reason provided by UCH is in fact an honest one. See Stewart, 207 F.3d at 378.

Chapman attempts to establish pretext by arguing that Gradman's "actions in investigating, suspending, and finally terminating Ms. Chapman were motivated by a desire to prevent and punish Ms. Chapman's use of her FMLA leave." Pl.'s Resp. at 11-12. Additionally, Chapman alleges that Gradman's investigations took place after Chapman returned from FMLA leave, because, according to Chapman, Gradman "did not like employees in her unit to take FMLA." Id. However, this statement is mere speculation and conclusion. In fact, Chapman concedes that she took of "24 days of FMLA leave for migraines in 2000; 27 days of FMLA for migraines in 2001, and at least 12 days of FMLA leave for migraines in 2002." Id. at 2.

Chapman has not set forth a legitimate reason for why she was granted medical leave for three years, but then suffered a retaliatory discharge for taking similar medical leave in 2002. Also, UCH alleges that sixteen of Chapman's twenty-four absences in the first half of 2002 occurred on either a Friday, Saturday, Sunday, or Monday. Pl.'s Supp. App., Ex. D. Therefore, UCH has shown that Gradman had an honest reason, by virtue of a pattern she thought existed, to investigate Chapman's continued absences from work. Chapman has not established that Gradman's purpose for her investigation and termination was a "phony reason for some action." See Crim, 147 F.3d at 541. Instead, Chapman merely claims that Gradman's reason for

15

investigating her absences "are contradicted by the facts and common sense." Pl.'s Resp. at 14.

However, UCH has set forth specific facts, through Chapman's suspected pattern of absences, to justify Gradman's investigation. This was not an arbitrary and capricious action undertaken by Gradman. She consulted with two other UCH employees on how to handle the situation, and even insured that a union representative was present when Gradman suspended Chapman. Additionally, the Human Resources department agreed with Gradman that Chapman had given false statements regarding her medical leave, and upheld the termination. Based on this established, elaborate procedure UCH implements when it terminates employees, Chapman has failed to demonstrate any basis on which the court should alter the judgment of those individuals who worked closely with, and tried to resolve, unsuccessfully, Chapman's attendance problems. See Stewart, 207 F.3d at 368.

Moreover, it is insufficient for Chapman to merely claim that Gradman's decision was "inaccurate, or not well-considered." Id. Chapman must assert affirmative facts that show Gradman lied, and that her main purpose was to fire Chapman for use of FMLA leave. See id. At the summary judgment stage, "the party opposing a motion for summary judgment must take reasonable steps to provide the district court sufficient evidence to create a genuine issue of material fact." Shank v. William R. Hague, Inc., 192 F.3d 675, 683 (7th Cir. 1999) (citing Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 503-04 (7th Cir. 1999) (indicating that summary judgment is the "put up or shut up" moment in a lawsuit)). This was not done, and as a result, Chapman's pretext argument must fail.

Because Chapman has not asserted a prima facie case of retaliation, and has failed to show Gradman's reason for termination were pretextual, there are no genuine issues of material fact, and summery judgment on Chapman's retaliation claim is proper as to UCH.

**C. Substantive Rights Violations under the FMLA**

*1. The Applicable Law*

The FMLA creates substantive rights that a firm must honor. Diaz, 131 F.3d at 713. An employee is entitled to as many as twelve weeks leave within one year because "of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In order to establish the existence of a severe medical condition, the employee must submit medical certification. Id., § 2613(a); see Diaz, 131 F.3d at 713. When an employee alleges a deprivation of these substantive rights, the employee must demonstrate by a preponderance of the evidence only entitlement to the benefit that he claims. Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1018 (7th Cir. 2000). Furthermore, the burden-shifting analysis of McDonnell Douglas, does not apply to substantive rights claims under the FMLA. Diaz, 131 F.3d at 712. With these principals in mind, the court examines Chapman's substantive claim under the FMLA.

*2. Chapman has not established a denial of FMLA leave*

As a preliminary matter, the court notes that Chapman alleges a denial of her substantive rights under the FMLA. See Def.'s Resp. at 9. However, Chapman claims that as a result of UCH's failure to address this issue in its Motion for Summary Judgment, she "is not obligated to put forth any evidence regarding her substantive FMLA claim at this time." Id. "The lack of development of this argument and absence of supporting case law speaks to the paucity of the argument." U.S. v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (quoting U.S. v. Watson, 189 F.3d 496, 500 (7th Cir. 1999)); see also Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 788 n.18 (7th Cir. 2003). Furthermore, the Seventh Circuit has "repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent theory, are waived." Goren v. New Vision Intern., Inc., 156 F.3d 721, 726 n.2 (7th Cir. 1998) (quoting U.S. v. Berkowitz, 927 F.3d 1376, 1384 (7th Cir. 1991)), cert. denied, 502 U.S. 845 (1991); see also Hoffman v. Caterpillar, Inc., 256 F.3d 568, 578 (7th Cir. 2001); see also Heft v. Moore, 351 F.3d 278, 285 (7th Cir. 2003) (the failure to cite cases in support of an argument waives the issue on appeal). However, with an abundance of caution, the court will address Chapman's substantive rights claim under the FMLA.

It is important to note that Chapman was never denied medical leave. In order to state a cause of action for the denial of substantive rights under the FMLA, Chapman must first show that a specific right under the FMLA was actually denied. Diaz, 131 F.3d at 712. Chapman concedes that her FMLA requests were always granted. She "took off 24 days of FMLA leave for migraines in 2000; 27 days of FMLA for migraines in 2001; and at least 12 days of FMLA leave for migraines in 2002." Pl.'s Resp. at 2. While Chapman can accurately recount the days of FMLA leave, the record is silent as to the number of FMLA requests UCH denied to

Chapman. The court has "examined the record thoroughly and can find no support for these allegations" aside from Chapman's own self-serving statements, "which are insufficient to create a genuine issue of material fact." Cichon v. Exelon Generation Co., L.L.C., 401 F.3d 803, 810 n. 8 (7th Cir. 2005). Absent any documentation that shows she was actually denied medical leave, Chapman cannot proceed with her claim and establish by a preponderance of the evidence that she was entitled to any substantive rights under the FMLA.

Chapman could conceivably contest whether UCH caught her in an arguably compromising position when the private investigator videotaped Chapman switching cars on the way to her nephew's house. Additionally, Chapman could conceivably allege that UCH's procedures for FMLA leave were too cumbersome and impractical, and in effect, constituted a denial of her substantive rights. These arguments must also fail, due to Chapman's admission that she was always granted FMLA leave, and followed UCH's procedure for medical leave. In ruling on a summary judgment motion, "the district court must decide 'whether the evidence. . . is so one sided that one party must prevail as a matter of law.'" Packman v. Chicago Tribune Co., 267 F.3d 628, 637 (7th Cir. 2001). The evidence in the record is simply insufficient to support a finding that Chapman has established a denial of her substantive rights under the FMLA. See Shank, 192 F.3d at 683. As a result, summary judgment is proper as to UCH on Chapman's substantive rights claim.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment.
IT IS SO ORDERED.

ENTER:

	_____
		CHARLES RONALD NORGLE, SR. Judge
		United States District Court

DATED: _____